STATE of Wisconsin, Plaintiff-Respondent,

v.

Tronnie M. DISMUKE, Defendant-Appellant.†

Court of Appeals

*No. 99–1734–CR. Submitted on briefs May 2, 2000.—Decided August 8, 2000.*

## 2000 WI App 198

(Also reported in 617 N.W.2d 862.)

† Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William S. Coleman, Jr.*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. Tronnie M. Dismuke appeals the judgment of conviction assessing court costs against him of $957.20. He also appeals the denial of his postconviction motion requesting vacation of the assessment, as well as the denial of his motion for reconsideration. Dismuke argues that the trial court erred in ordering him to pay fees and travel costs generated by the service of numerous orders to produce him from prison for his court appearances. He contends that these costs are not authorized by WIS. STAT. § 973.06,[1] and, further, that assessing these types of costs against him violates his constitutional rights to due process and equal protection. We affirm, determining that § 973.06 permits the assessment of costs for the service of an order to produce and the attendant travel fees, and that Dismuke's constitutional rights were not violated.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

## I. BACKGROUND.

¶ 2.    Dismuke was charged on June 12, 1996, with one count of armed robbery, and one count of felon in possession of a firearm. A year and a half later, he pled guilty to the armed robbery charge, and the other charge was dismissed and "read-in" for sentencing purposes. At his sentencing hearing, the trial court sentenced Dismuke to fifteen years in prison, consecutive to a sentence he was serving. Pertinent to this appeal, the trial court also imposed "applicable costs" on Dismuke.

¶ 3.    The circuit court clerk, in response to the court's directive, determined that Dismuke was responsible for $957.20 for costs, most of which was attributable to the orders to produce. All the orders to produce were signed by a court commissioner. The orders directed the warden to release Dismuke into the custody of the Milwaukee County Deputy Sheriffs, who transported Dismuke from Waupun to Milwaukee for his court proceedings and back to Waupun at the conclusion of his case. On the back of each order to produce, save one, the deputy sheriff who transported Dismuke entered a dollar figure for both travel and service of the order.[2]

---

[2] The record reveals eight orders to produce Dismuke. Seven of them reflect a travel and service charge totaling $213.20. One of them reflects only a service charge of $20. These amounts total $1512.40, not $957.20. The record is silent as to the cause of this mathematical error. We also note that the amounts reflected in the orders exceed the permissible fees set forth in WIS. STAT. § 814.70(4). We assume that, pursuant to WIS. STAT. § 814.705, the Milwaukee County Board set a higher fee. In any event, the formula used in calculating the fees is not in dispute and, therefore, we need not resolve the discrepancy.

¶ 4.  Dismuke filed a postconviction motion seeking a reduction in the costs. Dismuke's motion was based upon information his attorney received from personnel in the felony division of the Clerk of Court for Milwaukee County and personnel in the Milwaukee County Sheriff's Department. The trial court set a briefing schedule and also invited the Clerk of Court and the District Attorney to file briefs. In response, an accountant for the Clerk of Courts submitted a letter to the trial court. A letter brief on behalf of the Sheriff's Department was submitted by corporation counsel.[3]

¶ 5.  In a written decision, the trial court denied Dismuke's postconviction motion and ruled that WIS. STAT. § 973.06(1)(a) authorized the trial court to assess these costs against a defendant.[4] In addition, the trial court ordered that the judgment be amended to read $1512.40, the actual fees reflected in the orders to produce found in the record. Dismuke filed a motion for

---

[3] This case appears to have been plagued from the start with misinformation. Dismuke's postconviction motion was based on information supplied to his attorney by a clerk in the Sheriff's Department who claimed that the Sheriff's Department only charged a fee (by cross-charging another agency) for the service of an order to produce when the defendant was indigent. Corporation counsel also filed a brief containing inaccurate information. More correct information was supplied later by an accountant for the clerk's office who indicated that information given to Dismuke's attorney, as well as information contained in the corporation counsel's brief, was not entirely accurate. We also note that the brief filed by corporation counsel was of little assistance to the trial court in resolving the dispute as it contained no legal analysis, nor did it refer to any applicable statutes.

[4] Although the trial court refers to a written response from the District Attorney in its decision, nothing in the record can be found from the District Attorney addressing this issue.

reconsideration. He argued that the trial court's decision should be rescinded because it was received before the deadline set for Dismuke's reply brief, in which Dismuke asked for an evidentiary hearing. Further, Dismuke objected to the amended judgment, claiming that it was amended without notice and without any itemization of the fees. The trial court denied the motion for reconsideration without holding an evidentiary hearing, but it vacated its amended order requiring Dismuke to pay the higher amount.

## II. ANALYSIS.

¶ 6.  Dismuke contends that the trial court erred in determining that WIS. STAT. § 973.06 authorizes the costs assessed against him. The issue of whether the trial court had authority to order the payment of costs under § 973.06 is a question of law that we decide without deference to the trial court. *See State v. Bender*, 213 Wis. 2d 338, 341, 570 N.W.2d 590 (Ct. App. 1997).

### A.  *The Sheriff's Department service fee and travel costs are proper costs.*

¶ 7.  Dismuke claims that the trial court's order requiring the payment of certain costs should be vacated. Although acknowledging that WIS. STAT. § 973.06 permits the taxing of costs to a defendant when "[t]he necessary disbursements and fees of officers [are] allowed by law," Dismuke, relying on *State v. Ferguson*, 202 Wis. 2d 233, 238–39, 549 N.W.2d 718 (1996), first argues that the sheriff has not assessed any "fees" or made any "disbursements." In *Ferguson*, the supreme court held that "to constitute a fee . . . [the cost] must be chargeable and payable by another." *Id.* at 242. Dismuke contends that, according

to the information supplied to his attorney by the Sheriff's Department, the sheriff neither billed anyone nor cross-charged anyone for the service of any of the orders to produce him from prison or the resulting travel expenses. Thus, according to Dismuke, the fees for the orders to produce do not fall within the permissible fees allowed by the statute because they are not "chargeable and payable by another." Second, he submits that the statute's failure to specifically authorize intrastate travel expenses for transporting a defendant to court is proof that the legislature did not intend these costs to be charged to him. He states that this lack of intent can be derived from the fact that the statute does expressly authorize the taxing of costs for travel expenses associated with the transport of a defendant "from another state or country." Next, he argues that the fees caused by the service of the orders to produce on the warden were neither "necessary," nor do they qualify as "service of process" under WIS. STAT. § 814.70. Finally, he contends he could not be charged for these fees and costs because the State did not prove that he was the sole prisoner escorted by the sheriff when the order to produce was served on the warden.

¶ 8. We determine that the sheriff's fees for serving an order to produce and travel costs are "necessary disbursements and fees of officers" under WIS. STAT. § 973.06(1)(a) because: (1) the Sheriff's Department's actions of calculating the fees owed and placing the order to produce in the file make the fee "chargeable to and payable by another" and the service of an order to produce falls within the category of fees that the sheriff is mandated to collect under WIS. STAT. § 814.705; (2) the obvious intent of the language found in § 973.06(1)(a), stating that "[disbursements and fees] including, in the discretion of the court, the fees and

disbursements of the agent appointed to return a defendant from another state or country," was intended to enlarge the scope of fees that a defendant can be ordered to pay, not narrow it, as Dismuke argues, and thus, the intrastate service and travel fees are implicitly authorized under the statue; (3) the service of an order to produce is both "necessary" and a "service of process" because the very essence of an order to produce requires the sheriff to serve the warden in order to secure custody of the prisoner and transport the prisoner to court, and the travel fees are appropriate because WIS. STAT. § 814.70(4)(b) permits the sheriff to charge a fee for travel; and (4) the taxing of costs and travel fees for the service of orders to produce are proper even if multiple orders to produce are served at the same time and several prisoners are transported in the same vehicle.

¶ 9. As noted, the costs listed in WIS. STAT. § 973.06 are the only costs that can be taxed against a defendant. *See Ferguson*, 202 Wis. 2d at 238 ("By its plain language, then, the costs taxable against a defendant under § 973.06(1)(c) are limited to the items enumerated therein.").[5] Section 973.06(1)(a) provides:

> (1) Except as provided in [WIS. STAT. § 93.20], the costs taxable against the defendant shall consist of the following items and no others:
> (a) The necessary disbursements and fees of officers allowed by law and incurred in connection with the arrest, preliminary examination and trial of the defendant, including, in the discretion of the court, the fees and disbursements of the agent

---

[5] Unlike *State v. Ferguson*, 202 Wis. 2d 233, 549 N.W.2d 718 (1996), which dealt with the assessment of fees for expert witnesses, here, the breadth of WIS. STAT. § 973.06(1)(a) is in dispute.

appointed to return a defendant from another state or country.

Dismuke argues that the definitions of the words "fee" and "disbursement" found in *Ferguson* prevent the trial court from assessing costs for service of an order to produce. We disagree. First, *Ferguson* was discussing § 973.06(1)(c), a subsection dealing with expert witnesses fees, not § 973.06(1)(a). Specifically, the court asserted:

> The word "fees" in § 973.06(1)(c) describes a fixed charge for a professional service rendered by an expert witness, a sum which is ordinarily charged to and payable by another. The word "disbursements" . . . describes those incidental and out-of-pocket expenses which an expert witness may incur in the course of providing professional services; again, such out-of-pocket expenses are ordinarily charged to and payable to another.

*Ferguson*, 202 Wis. 2d at 241. In our view, *Ferguson* provides little support for Dismuke's position since the supreme court found only that § 973.06(1)(c) did not permit the assessment of costs for state expert witness fees in drug cases.[6] *Ferguson* does not discuss the taxable costs and fees for officers found in § 973.06(1)(a),

---

[6] WISCONSIN STAT. § 973.06 has been amended since *Ferguson* was decided. It now permits the assessment of:

(am) Moneys expended by a law enforcement agency under all of the following conditions:

1. The agency expended the moneys to purchase a controlled substance or controlled substance analog that was distributed in violation of ch. 961.

2. The moneys were expended in the course of an investigation that resulted in the defendant's conviction.

3. The moneys were used to obtain evidence of the defendant's violation of the law.

nor does it mention WIS. STAT. § 814.70. Thus, the definitions found in *Ferguson* do not concern themselves with the disputed issue here—whether fees assessed by the Sheriff's Department are taxable to Dismuke.

¶ 10.  Second, assuming *arguendo* that *Ferguson*'s definitions are relevant to the issues posed here, the definition of "fees" found in *Ferguson* has been met. *Ferguson* defines the word "fee" in WIS. STAT. § 973.06(1)(c) as connoting a "fixed charge" that is "chargeable to and payable by another."[7] *Ferguson*, 202 Wis. 2d at 234. Dismuke submits, relying on hearsay information provided to his attorney, that since the Sheriff's Department never billed or cross-charged anyone for the costs associated with the service of the orders to produce him from prison, these costs fall outside of the statute.

¶ 11.  As noted, the hearsay information relied upon by Dismuke is later refuted in a letter brief filed by an accountant for the Clerk of Courts. Moreover, evidence rebutting his claim that the orders were never "charged to and payable by another" is found in the record. Eight separate orders to produce Dismuke are in the record. On the back of every order to produce, a pre-printed box contains the statement, "This section for Sheriff's Department use only." In the box are blank spaces for the entry of a dollar amount for "Service," "Travel," "Attendance" and "TOTAL FEES." On the back of all the orders, monetary amounts are listed.

---

4.  The agency has not previously been reimbursed or repaid for the expended moneys by the defendant.

[7] Dismuke has argued that the definition of disbursement found in *Ferguson* has not been met. The State concedes that WIS. STAT. § 814.70(4m)(c) provides no authority for the fees and travel charges involved here. Consequently, the meaning of "disbursement" is unnecessary to our analysis.

The entry of dollar amounts and the totaling of those amounts on the line reading "TOTAL FEES" strongly suggests that the Sheriff's Department intended to charge the fees and, thus, they became "payable by another." Further evidence that the charges would be "payable by another" comes from the fact that the orders were not only filled out by Sheriff's Department personnel, but also that the Sheriff's Department personnel filed them in Dismuke's court file, presumably in anticipation that Dismuke would be ordered to pay them. Thus, we are satisfied that orders to produce fall within the *Ferguson* definition of fees as they were "charged to and payable by another." Consequently, whether the Sheriff's Department bills or cross-charges another agency for them is irrelevant to our analysis.

¶ 12. More important to our determination that the costs generated by an order to produce are taxable to Dismuke is WIS. STAT § 814.70, which mandates that the sheriff collect certain fees. Sections 814.70(1) and 814.70(4)[8] direct the sheriff to collect fees for the service and travel associated with an order to produce.

---

[8] WISCONSIN STAT. § 814.70(1) provides:

**Fees of sheriffs.** The sheriff shall collect the fees under this section. The fees are set as follows, unless a higher fee is established under [WIS. STAT. § 814.705]:

    **(1)** SERVICE OF PROCESS. For each service or attempted service of a summons or any other process for commencement of an action, a writ, an order of injunction, a subpoena or any other order, $12 for each defendant or person. If there is more than one defendant or person to be served at a given address, $6 for each additional defendant or person. No fee charged under this subsection in any action commenced under [WIS. STAT. § 813.12] may be collected from a petitioner under [§ 813.12]. The fee charged under this subsection in any action commenced under [§ 813.12] shall be collected from the respondent under [§ 813.12] if he or she is convicted

¶ 13. WISCONSIN STAT. § 814.70(1) commands that the sheriff collect fees for service of "a summons, or any other process for commencement of an action, a writ, an order for injunction, a subpoena *or any other order.*" An order to produce is an order, and thus, the phrase "any other order" encompasses an order to produce. Inasmuch as the orders to produce were generated out of the criminal court, they are criminal processes and the recoupment of travel fees for the service of an order to produce falls squarely within the directive of § 814.70(4)(b). Thus, § 814.70(1) obligates the sheriff to charge for the service of an order to produce, and § 814.70(4)(b) likewise obligates the sheriff to assess costs for "travel in serving criminal process." Consequently, pursuant to § 814.70, orders to produce become "necessary disbursements and fees of officers allowed by law" under WIS. STAT. § 973.06(1)(a) for travel costs.

¶ 14. Dismuke next contends that the statutory language found in WIS. STAT. § 973.06(1)(a), that "[fees and disbursements consist of] the fees and disbursements of the agent appointed to return a defendant from another state or country" excludes the taxing of fees and disbursements for a defendant who is

---

of violating a temporary restraining order or injunction issued under [§ 813.12 (3) or (4)].

WISCONSIN STAT. § 814.70(4) provides:

(4) TRAVEL; CRIMINAL PROCESS. For travel in serving any criminal process:

(a) In counties having a population of less than 500,000, 25 cents per mile.

(b) In counties having a population of 500,000 or more, $4 for each person served within the county from which process issued, or 25 cents per mile if served outside the county.

(c) The actual and necessary disbursements for board and conveyance of the prisoner.

returned from a location within Wisconsin. He argues that because the statute makes no mention of fees and disbursements for the return of a defendant intrastate, that the legislature intended to exclude them. We disagree.

¶ 15.   The lodestar of statutory interpretation is discerning the intent of the legislature. *See Milwaukee County v. DILHR*, 80 Wis. 2d 445, 451, 259 N.W.2d 118 (1977). In looking for legislative intent we start with the language of the statute. *See Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). Giving the language found in WIS. STAT. § 973.06(1)(a) its ordinary and logical meaning, we observe that the statue expands rather than narrows the type of costs that can be assessed against a defendant. Our interpretation of the phrase highlighted by Dismuke, in the context of the entire statute, indicates that the legislature intended to broaden the type of taxable costs payable under the statute. Thus, the language found in § 973.06(1)(a)—"The necessary disbursements and fees of officers allowed by law and incurred in connection with the arrest, preliminary examination and trial of the defendant, including, in the discretion of the court, the fees and disbursements of the agent appointed to return a defendant from another state or country"—signals that fees and disbursements for out-of-state costs are in addition to the fees and costs associated with returning a defendant from a location within Wisconsin.

¶ 16.   Case law also supports our interpretation. In *State v Evans*, 171 Wis. 2d 471, 480, 492 N.W.2d 141 (1992), the supreme court held that the use of the word "includes" generally indicates a type of expansion.

"[The statute] uses the verb 'includes,' which is normally a term of enlargement rather than limitation." *Id.* Here, the statute uses the term "including." Thus, we determine that both the language of the statute itself and case law support a conclusion that the legislature intended to enlarge the scope of taxable costs beyond intrastate travel costs to include the out-of-state travel fees associated with the return of a defendant. Consequently, we determine that the statute implicitly permits the taxing of intrastate travel costs.

¶ 17.  Next, Dismuke maintains that the taxing of a service fee and travel costs associated with the service of an order to produce was improper because an order to produce is not "service of process" under WIS. STAT. § 814.70(1), and the travel expenses associated with the service of the order to produce are unnecessary and unjustified because the sheriff could have easily mailed the order to produce to the warden.

¶ 18.  Dismuke contends that an order to produce is "a mere mechanism that authorizes the warden to release the prisoner." We disagree. As noted, WIS. STAT. § 814.70(1) authorizes the sheriff to charge for the service of "any other order," and an order to produce is a qualified order. Further, the essence of an order to produce is to order the warden to release the prisoner to a law enforcement officer for transport to court and back again. An order to produce is not a "mere mechanism," but rather, it is the order relieving the warden of responsibility for the prisoner in his custody and authorizing the warden to temporarily release the prisoner to another agency for the express purpose of transporting the prisoner to pending court proceedings. Further, under these circumstances, it would be illogical to mail the service of an order to a warden

when a sheriff's deputy is required to effectuate the court's order.

¶ 19.   Finally, Dismuke submits that he should only be charged for the service of an order to produce and the travel fees associated with it if the order to produce was served individually and he was the sole passenger in the sheriff's vehicle. Dismuke contends that he should not be assessed the costs of orders to produce when he was transported with other prisoners. Dismuke relies on language in WIS. STAT. § 814.70(3)(b) for his argument.

¶ 20.   WISCONSIN STAT. § 814.70(3) provides:

> (3)   TRAVEL; CIVIL PROCESS. For travel in serving any summons, writ or other process, except criminal warrants, and except that a fee under this subsection in any action commenced under [WIS. STAT. § 813.12] may not be collected from a petitioner but shall be collected from the respondent if he or she is convicted of violating a temporary restraining order or injunction issued under [§ 813.12 (3) or (4)]:
>
> . . . .
>
> (b)   In counties having a population of 500,000 or more, $4 for each party to be served in each action. *Only one charge may be imposed if there is more than one person to be served at a given address.*

Contrary to Dismuke's argument, we see nothing in § 814.70(4)(b) that limits the sheriff from requesting fees for the service of multiple orders to produce, nor does the statute require recoupment for travel fees only when the prisoner is the single passenger. Obviously the legislature restricted the collectable fees for service of civil process in § 814.70(3)(b) to one fee per household, but it made no similar restriction in § 814.70(4) regulating the service of criminal process.

¶ 21. In sum, we are not persuaded by any of Dismuke's arguments and we are satisfied that fees and travel costs for orders to produce are authorized under WIS. STAT. § 973.06(1)(a).

B. *The taxation of costs in connection with the service of an order to produce does not violate Dismuke's constitutional rights.*

¶ 22. Dismuke next contends that if this court determines the order to produce costs fall within WIS. STAT. § 973.06, the statute is unconstitutional as applied to him. He submits that his constitutional rights to equal protection and due process were violated by the assessment of costs associated with the service of the orders to produce him from prison. Dismuke first argues that he has been denied equal protection because other "similarly situated defendants" with charges pending in Milwaukee County were not assessed the fees sought here.[9] Dismuke asserts that an equal protection violation occurred when he was required to pay fees which arose out of the fact that he was in state custody when others in county custody

---

[9] Dismuke also argues that he was treated differently than other prisoners, based on the statements made in the brief filed by corporation counsel that the Sheriff's Department ordinarily does not cross-charge another agency for orders to produce. As noted, the information provided by corporation counsel in its brief was corrected by the accountant for the Milwaukee County Clerk of Courts and the trial court accepted the accountant's statements over those of the Sheriff's Department employees. In any event, the circumstances in which the Sheriff's Department cross-charges another agency for the cost of serving orders to produce and related travel are of no consequence to the resolution of whether assessing these costs to Dismuke is unconstitutional.

were not also assessed. He also claims that he was denied due process because several court dates had to be adjourned through no fault of his, and he posits that it is "fundamentally unfair" to require him to pay the costs. Dismuke is wrong.

¶ 23. The applicable standard of review this court must apply in resolving the merits of his contention is set forth in *State v. Borhegyi*, 222 Wis. 2d 506, 508–09, 588 N.W.2d 89 (Ct. App. 1998):

> In reviewing constitutional questions, the trial court's findings of historical facts are subject to the clearly erroneous standard, but the application of those facts to constitutional standards and principles is determined without deference to the trial court's conclusion.

Here, the trial court did not make any findings of fact concerning the constitutional issues Dismuke raises. Thus, this court must review the record and independently determine whether the facts lead to a constitutional violation. As the supreme court recently observed in *Czapinski v. St. Francis Hospital*, 2000 WI 80 ¶ 27, 236 Wis. 2d 316, 613 N.W.2d 120:

> This court starts with the presumption that a statute is constitutional and will continue to preserve a statute's constitutionality if there is a reasonable basis for the exercise of legislative power.

(Citation omitted.)

■

¶ 24. Dismuke's first constitutional argument is based on the Equal Protection Clause of the Wisconsin Constitution.[10] "The guarantees of equal protection in the United States and Wisconsin Constitutions require

---

[10] Dismuke correctly notes:

that persons similarly situated be accorded similar treatment," *State v. Avila,* 192 Wis. 2d 870, 879–80, 532 N.W.2d 423 (1995) (footnote omitted). "This court will uphold a statute under an equal protection analysis '[i]f a rational basis exists to support the classification, unless the statute impinges on a fundamental right or creates a classification based on a suspect criterion.' " *Czapinski,* 2000 WI 80 at ¶ 27 (citation omitted). "The Petitioners must prove that the statute is unconstitutional beyond a reasonable doubt." *Id.*

■

¶ 25. Dismuke claims that his constitutional right to equal protection was violated, and he cites *Wisconsin Evangelical Lutheran Synod v. City of Prairie du Chien,* 125 Wis. 2d 541, 373 N.W.2d 78 (Ct. App. 1985), for support. The *Wisconsin Evangelical Lutheran Synod* case held that "[e]qual protection is denied where . . . [a] statute is administered with an unequal hand so as to make an illegal discrimination between persons similarly situated." *Id.* at 552. Applying this test, Dismuke argues that there was a violation because not all "similarly situated defendants" to him were treated equally. Specifically, he submits that requiring him to pay the cost of an order to produce while in state custody, when similarly situated defendants in county custody are not assessed these fees, is a violation. We disagree.

---

"[T]he due process and equal protection clauses of the Wisconsin Constitution are the substantial equivalents of their respective clauses in the federal constitution. The Due Process Clause of the Fifth Amendment includes a guarantee of equal protection parallel to that in the Fourteenth Amendment."

(Citations omitted.)

¶ 26. First, we note that Dismuke casts his net too wide in arguing that persons facing charges in county custody are "similarly situated defendants" to him. Defendants awaiting trial who are in state custody are not similarly situated to those defendants who are in county custody. A person awaiting trial who is not in state custody may be released on bail or may be released without having to post any bail. Further, those persons in county custody not released on bail are held in the Milwaukee County Jail. The Milwaukee County Sheriff's Department oversees the County Jail, obviating the need for an order to produce. On the other hand, Dismuke and others in state custody awaiting trial are lodged in a state facility and an order to produce is required because they are in the custody of the Department of Corrections. Consequently, any discussion concerning those in county custody as "similarly situated defendants" is inaccurate.

¶ 27. Moreover, were we to consider all persons awaiting trial to be "similarly situated" to Dismuke, a rational basis exists for disparate treatment. The costs of serving an order to produce and transporting a prisoner from elsewhere, are considerably higher than the costs of transporting a prisoner in county custody who is in the county jail. Consequently, Dismuke's equal protection argument fails. Further, he has submitted no proof, as he is obligated to do, that those who are similarly situated—those in state custody awaiting a trial in a criminal matter—have been treated differently.

¶ 28. Next, Dismuke argues that his due process rights were violated. He contends that by assessing the " 'costs' of transport and service of the orders to produce for dates in which the trial was adjourned through no

fault or action of [his own]" is "fundamentally unfair and a violation of due process."[11] We disagree.

■

¶ 29. Substantive due process prohibits a state "from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.' " *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). Here, Dismuke has failed to show how charging him with the costs associated with his transportation for proceedings that were ultimately adjourned for reasons not of Dismuke's making "shocks the conscience" or "interferes with rights 'implicit in the concept of ordered liberty.' " A trial court order that he pay all the costs associated with the service of the orders to produce him from the state institution where he was confined to the courtroom does not "shock the conscience" nor does it interfere with his rights. In this matter, Dismuke was in state prison because he was found guilty of a crime. His actions brought about the additional costs. His confinement was a direct result of his unlawful conduct and, thus, it cannot be argued that he played no part in the generation of the costs to transport him. Consequently, the fact that he may not have caused any particular adjournment does not relieve him of the burden of paying for these "necessary costs."

---

[11] Dismuke also contends that the information provided in the brief filed by the corporation counsel indicates he was charged these fees through mistake or oversight, and thus, his due process rights were violated. As previously noted, we have adopted the trial court's conclusion that the information supplied by the corporation counsel in its brief was incorrect. Without it, Dismuke has not met his burden of proving a due process violation beyond a reasonable doubt.

¶ 30.   In sum, we conclude that both the service charge for an order to produce and the travel costs associated with it are "necessary disbursements and fees of officers allowed by law" under WIS. STAT. § 973.06 and they were properly charged against Dismuke. Further, § 973.06 does not violate Dismuke's constitutional rights.

*By the Court.*—Judgment and orders affirmed.